Teresa M. Shill, OSB # 031680
E-Mail: tshill@rcflegal.com
Routh Crabtree Olsen, P.C.
11830 SW Kerr Parkway, Ste. 385
Lake Oswego, Oregon 97035
Phone: (503) 977-7926
Fax: (503) 977-7963
Attorney For Defendant Federal
Deposit Insurance Corporation.

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| CORINNA-BRIDGETT, *in esse*, individually, and as Agent for and on behalf of SALAL PARK, INC., an Oregon non-profit corporation<br><br>                          Plaintiffs<br>    v.<br><br>WASHINGTON MUTUAL BANK, N.A.; ROUTH CRABTREE OLSEN, P.C.: ALAN H. FISHMAN; TERESA M. SHILL; NANCY E. HOCHMAN; THOMAS W. KOHL; AND ROB GORDON,<br><br>                          Defendants. | Case No. 08CV-1072-HU<br><br>**DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK'S MOTION FOR STAY PENDING EXHAUSTION OF MANDATORY ADMINISTRATIVE CLAIMS PROCESS** |

Defendant, Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank, N.A. (the "FDIC-Receiver"), by and through undersigned counsel, hereby move the Court for an order further staying this action until the earlier of (1) November 22, 2009, or (2) for 180 days after the named Plaintiffs submit their claims in the mandatory administrative claims Process set forth in 12 U.S.C. §§ 1821(d)(3) through (13), enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").

## I. INTRODUCTION

At FDIC-Receiver's request, the Court previously stayed this action for 90 days, until March 2, 2009, pursuant to 12 U.S.C. § 1821(d)(12). During that 90-day stay, FDIC-Receiver has familiarized itself with the claims in this case, and taken measures to implement the mandatory administrative claims process. An additional stay is now appropriate, as a matter of law. As the U.S. Court of Appeals for the Ninth Circuit has recognized, under 12 U.S.C. §§ 1821(d)(3) through (13), all claimants against a failed financial institution, such as Washington Mutual Bank ("WMB"), are required to exhaust an administrative claims process as a prerequisite to judicial review of their claims. *See*, e.g., *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1284 (9th Cir. 1994). Because the administrative claims process is mandatory, "allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA." *Carney v. FDIC*, 19 F.3d 950, 955-56 (5th Cir. 1994) (citation and internal quotation marks omitted). For that reason, courts have consistently recognized that pending litigation should be stayed while the Receiver completes its determination of filed claims. *See*, e.g., *Intercontinental Travel*, 45 F.3d at 1285; *Brady Dev. Co., v. Resolution Trust Corp*. 14 F.3d 998, 1005-06 (4th Cir. 1994); *Carney*, 19 F.3d at 955-56; *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992).

As explained below, on September 25, 2008, WMB was closed and the FDIC was appointed as Receiver for WMB. Exercising its exclusive authority under FIRREA, FDIC-Receiver established December 30, 2008, as the date by which claims against WMB must be submitted to FDIC-Receiver in the administrative claims process — the "claims bar date."

However, pursuant to FDIC-Receiver's policy, any creditors shown on the books of WMB who were not provided mail notice of the claims process and bar date by November 30, 2008, will be given 90 additional days from the date of mailed notice to submit an administrative claim. Here, FDIC-Receiver provided named Plaintiffs Corinna-Bridgett and Salal Park Inc. with mailed notice on February 24, 2008. Thus, Plaintiffs Corinna-Bridgett and Salal Park Inc. will be given until May 26, 2009 to submit their administrative claims. Once claims are submitted, FDIC-Receiver then has 180 days to make a determination on the claims. *See* 12 U.S.C. § 1821(d)(5)(A)(1). Accordingly, FDIC-Receiver respectfully requests that the Court further stay these proceedings through the earlier of (i) November 22, 2009, or (ii) 180 days after the named Plaintiffs submit their administrative claims to FDIC-Receiver, to permit exhaustion of the mandatory administrative claims process.

## II.  BACKGROUND

### A.  THE MANDATORY ADMINISTRATIVE CLAIMS PROCESS.

In FIRREA, Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as Receiver for a failed financial institution and special powers to carry out that function. The FDIC, as Receiver, must conserve and preserve the failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the institution's valid creditors. *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E). When making distributions to creditors, the Receiver must prioritize the payment of claims in accordance with federal statutory and regulatory requirements. *See* 12 U.S.C. §§ 1821(i)(1) & (2); 12 C.F.R. § 360.2 (1989). Congress has given the Receiver discretion to determine the

timing and amount of such distributions.  *See* 12 U.S.C. §§ 1821(d)(10)(A) & (B).

FIRREA grants the Receiver "power to take all actions necessary to resolve problems posed by financial institutions in default."  H.R. Rep. No. 101-54(l) at 330, reprinted in 1989 U.S.C.C.A.N. 126.[1]  The Receiver's powers are "quite broad, in keeping with the emergent objectives of the statute."  *Rosa v. RTC*, 938 F.2d 383, 398 (3d Cir. 1991).  Congress gave the Receiver such broad powers so that it would be able to "resolve failed institutions in an expeditious manner."  H.R. Rep. No. 101-54(l), at 322 (1989), reprinted in 1989 U.S.C.C.A.N. 118.

As an important part of the comprehensive scheme for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims.  That administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims against a failed financial institution by requiring that all claims be submitted to the Receiver by the claims bar date, a date certain established by the Receiver.  The Receiver then has up to 180 days to review all claims, and grant or deny those claims (in whole or in part), without the delay and expense of litigation.  See 12 U.S.C. § 1821(d)(5)(A)(i).

---

[1] Numerous courts have recognized the broad grant of power in FIRREA.  For example, the Eighth Circuit recognized that "Congress passed FIRREA as emergency legislation to resolve expeditiously the 'monumental problems involved with the unprecedented costs' of the savings and loan crisis."  *RTC v. CedarMinn Bldg. Ltd. P'ship*, 956 F.2d 1446, 1456 (8th Cir. 1992).  The Third Circuit commented that FIRREA is "the most sweeping thrift reform law in the nation's history."  Praxis Props., Inc. v. Colonial Sav. Bank, 947 F.2d 49, 62 (3d Cir. 1991).  The Second Circuit noted that in FIRREA, Congress expressly and intentionally created a "detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance fund. . . ."  *Circle Indus. v. City Fed. Sav. Bank*, 749 F. Supp. 447, 451 (E.D.N.Y. 1990), *affd,* 931 F.2d 7 (2d Cir. 1991) (per curiam).

The administrative claims process is mandatory.  Thus, in Section 1821(d)(13)(D), Congress withdrew jurisdiction from all courts to hear claims against the FDIC as Receiver, except as granted elsewhere in Section 1821(d):

(D) Limitation on judicial review

Except as otherwise provided in this subsection, **no court shall have jurisdiction over** —

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (**emphasis** added).  Jurisdiction is "otherwise provided" by subsection 1821(d) only for those claimants that have completed the administrative claims process.  *See* 12 U.S.C. §§ 1821(d)(6)(A)(ii), (d)(7)(A), & (d)(8)(C).  Congress' overriding purpose for requiring exhaustion of the administrative procedures was to enable the Receiver "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."  H.R. Rep. No. 54(I), 101st Cong., 1st Sess. (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215.

Under FIRREA, management of the claims process is committed to the exclusive power and discretion of the Receiver, and the Receiver's management of the claims process is a core function of the Receiver.  *See*, e.g., 12 U.S.C. § 1821(d)(3)(A) ("The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph 4."); *id*. § 1821(d)(4) (conferring FDIC with authority to promulgate

regulations and rules concerning claims process and determination of claims); *id.* § 1821(d)(5)(D) ("The receiver may disallow any portion of any claim by a creditor . . . which is not proved to the satisfaction of the receiver."). Further, the Receiver may "exercise . . . such incidental powers as shall be necessary to carry out such powers," and "take any action authorized by this Chapter, which [FDIC] determines is in the best interests of the depository institution, its depositors, or the [FDIC]." Id. § 1821(d)(2)(J)(i), (ii).

B. THE STATUS OF THIS ACTION.

On September 15, 2008 Plaintiffs filed this action against WMB and other defendants. Plaintiffs assert that WMB failed to comply with FRCP 4, the rules for Admiralty, and engaged in treason. Plaintiffs made other indiscernible claims.

On October 3, 2008, defendants Routh Crabtree Olsen, P.C. and Teresa M. Shill filed its Motion to Dismiss. On October 6, 2008, defendant Rob Gordon filed his Motion to Dismiss, and on October 16, 2008, defendants Thomas W. Kohl and Nancy E. Hochman filed their Motion for a More Definite Statement of Alternatively Motion to Dismiss.

On September 25, 2008, the Office of Thrift Supervision ("OTS") closed WMB and appointed the FDIC as Receiver for WMB. *See* Declaration of Teresa M. Shill ("Shill Decl."), Exhibit "A" (OTS Order No. 2008-36, Sept. 25, 2008).[2] On that same date, a Purchase-and-

---

[2] The FDIC is authorized to accept appointment as a Receiver for any insured depository institution. See 12 U.S.C. § 1821(c). When the FDIC is appointed as Receiver, the Receiver succeeds to "all rights, titles, powers and privileges of" the bank, and may "take over the assets of and operate" the bank with all the powers thereof. Id. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). The powers and duties of the Receiver include the power to resolve all outstanding claims against the failed institution. Id. To facilitate that process, Congress granted the FDIC, in its capacity as Receiver or Conservator, special statutory powers and defenses. See, e.g., 12 U.S.C.

Assumption Agreement (the "P&A Agreement") was entered among FDIC-Receiver, the FDIC in its corporate capacity, and JPMorgan Chase, National Association ("JPMorgan") with respect to certain assets and liabilities of WMB. *See* Shill Decl., Exhibit "B", for the applicable portions of the P&A Agreement. Article 2.5 of the P&A Agreement expressly provides that JPMorgan did not assume "any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by [WMB] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [WMB], or otherwise arising in connection with the [WMB]'s lending or loan purchase activities. . . ." *See* Shill Decl., Ex. B at 9. Such litigation, including this case, remained with FDIC-Receiver.[3]

On November 7, 2008, FDIC-Receiver filed a motion to substitute FDIC-Receiver for WMB as defendant in this action, and to stay this action for 90 days pursuant to 12 U.S.C. § 1821(d)(12). The Court granted the motions on December 2, 2008, and stayed this case until March 2, 2009.

Congress has defined FDIC-Receiver's obligations to provide notice of the administrative claims process by statute. *See* 12 U.S.C. § 1821(d)(3).[4]  On October 1, 2008, pursuant to 12

---

§ 1821(j) ("Except as provided in this section, no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver.").

[3] A purchase and assumption transaction is the favored alternative in handling a bank failure because the "transaction usually is arranged overnight, so that banking services are not interrupted for a single business day." N*CNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1496 (5th Cir. 1990). *Accord FDIC v. Bank of Boulder*, 911 F.2d 1466, 1469 (10th Cir.), *cert. denied*, 499 U.S. 904 (1991) ("Elimination of P&A's as an option for FDIC/Receiver would cause a great interference in the effective performance of the FDIC's mission to stabilize the banking industry.").

[4] FDIC-Receiver is required to publish a notice to the failed institution's creditors to present their claims, and related proof, by a specified date at least 90 days following publication of the notice,

U.S.C. § 1821(d)(3)(B), FDIC-Receiver published notice in The Wall Street Journal notifying creditors that any claims against WMB must be submitted to FDIC-Receiver, pursuant to the administrative claims process, by December 30, 2008.  *See* Shill Decl., Exhibit C, the Declaration of David Swiss, dated January 6, 2009, including the attachments.  Pursuant to Section 1821(d)(3)(B), the notices were re-published in The Seattle Times, the Las Vegas Review-Journal/Las Vegas Sun Newspapers, and The Wall Street Journal on October 31, 2008, and again in The Seattle Times and Las Vegas Review-Journal/Las Vegas Sun Newspapers on December 1, 2008.  *See* Ex. C.

In addition, FDIC-Receiver has been carrying out its statutory duty to provide individual mail notice of the administrative claims process and claims bar date to all creditors listed on the books and records of WMB as of September 25, 2008, as well as to the named Plaintiffs in this case.  *See* Shill Decl., Ex. C at ¶¶ 4-5.  FDIC-Receiver attempted to complete mail notice of the claims process and bar date to creditors on WMB's books by November 30, 2008.  *Id.* at ¶ 4.  In some cases, individuals shown as creditors on WMB's books may not have been mailed notice of the claims process until after November 30, 2008.  *Id.* at ¶ 5.  Pursuant to FDIC-Receiver's policy, if a notice letter is provided to a creditor less than 30 days prior to the claims bar date, then the creditor is given 90 days from the date of the notice letter to submit a claim in the administrative claims process.  Id.  In this case, Corinna-Bridgett and Salal Park Inc. were provided with mailed notice on February 24, 2009.  *See* Shill Decl., Ex. C.  Accordingly, Plaintiffs Corinna-Bridgett and Salal Park Inc. will be given until May 26, 2009, to submit their

---

and to republish such notice 30 and 60 days after it was initially made. See 12 U.S.C. § 1821(d)(3)(B).  FDIC-Receiver must also provide notice by mail to "any creditor shown on the [failed] institution's books . . . ."  Id. at § 1821(d)(3)(C).

administrative claims to FDIC-Receiver.

### III.  ARGUMENT

As a matter of law, this case should be stayed pending Plaintiffs' exhaustion of the administrative claims process mandated by FIRREA.

   i. <u>Exhaustion of The Administrative Claims Process is a Mandatory Prerequisite to Judicial Review</u>.

In 12 U.S.C. §§ 1821(d)(3) through (d)(13), Congress established a mandatory administrative claims process to provide a mechanism for resolving as promptly and efficiently as possible all claims against failed financial institutions.  *See*, e.g., *Intercontinental Travel*, 45 F.3d at 1282-83; *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993); *accord Meliezer v. RTC,* 952 F.2d 879, 882 (5th Cir. 1992); *Bueford v. RTC*, 991 F.2d 481, 484 (8th Cir. 1993).  As the U.S. Court of Appeals for the Fifth Circuit has explained:

> To assure that the RTC or Federal Deposit Insurance Corporation could deal expeditiously with failed depository institutions, Congress created a new claims determination procedure by which the creditors of a failed institution may be required to first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy.  12 U.S.C. § 1821(d)(3).

Meliezer, 952 F.2d at 881 (footnotes omitted).

As part of the administrative claims process, the Receiver has the power to set a claims bar date, by which all claims must be submitted.  *See* 12 U.S.C. § 1821(d)(3), 1821(d)(5)(C).  Under the statutory claims process, all claims against a failed financial institution must be presented before the claims bar date (or by a specific subsequent date, if the claims bar date has been extended for a particular claimant).  *See* 12 U.S.C. § 1821(d)(3).  The Receiver has 180 days after a claim is filed to determine whether to approve the claim.  *See* 12 U.S.C. §

1821(d)(5)(A)(i).  The Receiver may disallow any portion of a timely claim that is not proven to the Receiver's satisfaction.  *Id.* at §§ 1821(d)(5)(C), 1821(d)(5)(D).  Section 1821(d)(6)(A) also establishes that a claimant can file a new suit, or continue a pre-existing suit, on a claim within 60 days after the earlier of (i) the Receiver's initial determination of a claim, or (ii) termination of the 180-day period in which the Receiver may determine the claim.  *See* 12 U.S.C. § 1821(d)(6)(A).[5]  In such a suit, the Receiver's final determination is subject to *de novo* judicial review.  *See* 12 U.S.C. § 1821(d)(7)(A).

Apart from the review process set forth in section 1821(d), Congress barred all courts from hearing claims against the Receiver unless and until the claimant completes the administrative claims process.  *See* 12 U.S.C. § 1821(d)(13)(D).  As the U.S. Court of Appeals for the Ninth Circuit recognized in *Intercontinental Travel*, "[n]o court has jurisdiction over the claim until the exhaustion of this administrative process."  45 F.3d at 1282-83.  Because the plaintiff in *Intercontinental Travel* "failed to properly exhaust the statutorily mandated exhaustion requirements of § 1821(d)," the Court held that "no jurisdiction exist[ed] over its action."  *Id*.  *Accord Henderson*, 986 F.2d at 321 ("A claimant must . . . first complete the claims process before seeking judicial review).  Other Circuits have uniformly agreed with the Ninth Circuit, holding that "Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review

---

[5] The statute provides that:
> [T]he claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).
> 12 U.S.C. § 1821(d)(6)(A).

process." *Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995).[6]

Moreover, the Ninth Circuit and other Circuits have consistently held that the administrative exhaustion requirement applies to all claimants, including those who had already initiated litigation against a financial institution prior to the appointment of a Receiver.  In *Intercontinental Travel*, the Ninth Circuit explicitly rejected an argument, based on subsection 1821(d)(5)(F)(ii), that claimants who filed suit before the FDIC's appointment as Receiver are exempt from the administrative claims process under FIRREA.  45 F.3d at 1283.  *Accord Brady*, 14 F.3d at 1005-06 (holding that subsections 1821(d)(13)(D) and (d)(6)(A) "mandate that the district court could not hear any claim until it has been rejected by the [Receiver] in its administrative review or until the 180 day administrative review period has expired."); *Marquis*, 965 F.2d at 1151 ("FIRREA makes participation in the administrative process **mandatory** for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver.") (**emphasis** added); *Resolution Trust Co. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) ("The statute clearly requires that each creditor file a claim.  12 U.S.C. § 1821(d)(3)(B)(i). . . .  **No interpretation is possible**

---

[6] See also *Damiano v. FDIC*, 104 F.3d 328, 333 (11th Cir. 1997) ("For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies."); *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 849 (3d Cir. 1994) ("[T]he purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs with claims against failed depository institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court."); *Bueford,* 991 F.2d at 484 ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court."); *Meliezer*, 952 F.2d at 882 ("[S]ection 1821(d)(13)(D) clearly establishes a statutory exhaustion requirement."); *RTC v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says . . . that a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts."); *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 136 (3d Cir. 1991) ("[T]he administrative procedure exhaustion requirement of FIRREA is statutory, not judicial . . . .  We are therefore not at liberty to ignore the statutory command.").

**which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.**") (**emphasis** added).  The requirement that all claimants against a failed financial institution, including those who filed lawsuits prior to a bank's failure, exhaust the administrative claims process advances Congress's purpose to enable the Receiver to resolve the bulk of claims against failed financial institutions expeditiously, fairly, and without the expense of litigation.  See H.R. Rep. No. 54(I), 101st Cong., 1st Sess. (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215.[7]

> ii. A Further Stay of This Action is Required Pending Exhaustion of the Administrative Claims Process.

It follows from the mandatory nature of the administrative claims process established by FIRREA, that actions pending against a failed institution at the time a Receiver is appointed must be stayed to permit exhaustion of the claims process.  See, e.g., *Intercontinental Travel*, 45 F.3d at 1284; *Brady*, 14 F.3d at 1005-06; *Marquis*, 965 F.2d at 1151.  In *Marquis*, the First Circuit construed 12 U.S.C. §§ 1821(d)(3) through (13) "as constructing a scheme under which courts will retain jurisdiction over pending lawsuits — suspending, rather than dismissing the suits —

---

[7] The administrative exhaustion requirement applies to all types of claims, including claims for non-monetary, equitable or declaratory relief.  As the Ninth Circuit explained in Henderson, "[t]he [claims process] statute bars judicial review of any non-exhausted claim, monetary or non-monetary, which is 'susceptible of resolution through the claims procedures.'"  986 F.2d at 332 (emphasis added).  *Accord Elman*, 949 F.2d at 627 (attorney retaining lien subject to claims process); *Shain, Schaffer & Rafanello*, 944 F.2d at 130 ("[E]ven a valid state law lien cannot be used to circumvent the claims procedure established under FIRREA . . . ."); *Feise v. RTC*, 815 F. Supp. 344, 347-349 (E.D. Cal. 1993) (holding that claims for injunctive and declaratory relief against Receiver were encompassed within jurisdictional bar of Section 1821(d)(13)(D) and dismissing those claims together with claims for money damages); *RTC v. Wayne Coliseum Ltd. Partnership*, 793 F. Supp. 900, 905-06 (D. Minn. 1992) (dismissing counterclaim seeking damages and specific performance because defendants had failed to satisfy the claims procedures).

subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims. . . . By staying all proceedings in a pending action until the administrative claims process has run its course, efficacy will be promoted." 965 F.2d at 1154; *see also Carney*, 19 F.3d at 955-56 ("It appears clear to us that allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA. We conclude, as other courts have done, that FIRREA creates a scheme under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing, the suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims.") (citation and internal quotation marks omitted)); *Brady*, 14 F.3d at 1005 ("While the claims received are under evaluation, sections 1821(d)(6)(A) and (d)(13)(D) forbid courts from continuing to exercise jurisdiction over pending claims against the [Receiver] and permit judicial review only after exhaustion of administrative remedies. During the administrative review all pre-receivership claims are tolled.").

Recently, on November 7, 2008, under circumstances just like this case, Chief Judge Stotler of the U.S. District Court for the Central District of California ruled that a putative class action pending against the FDIC, as Receiver for IndyMac Bank, F.S.B. ("IndyMac"), should be stayed pending exhaustion of the mandatory administrative claims process. *See* Shill Decl., Exhibit E (11/7/08 Order granting 180-day stay in *Spicer et al. v. FDIC as Receiver for IndyMac Bank F.S.B.*, (Case No. 07-03456). Just like Chief Judge Stotler's ruling granting a 180-day stay in the Spicer action, the U.S. Court of Appeals for the Seventh Circuit and the U.S. District Court

for the Southern District of New York have recently issued orders staying pre-Receivership putative class actions against the FDIC as Receiver for IndyMac pending the plaintiffs' exhaustion of the administrative claims process.

In this case, the claims bar date was December 30, 2008. Because named Plaintiffs Corninna-Bridgett and Salal Park Inc. were provided with individual mailed notice of the claims process after November 30, 2008, they will have 90 days from the date of their mailed notice to submit their administrative claims to the Receiver. Under 12 U.S.C. § 1821(d)(5)(A)(i), FDIC-Receiver has 180 days from the date of submission to act on a claim. Thus, in this case, Plaintiffs will have until May 26, 2009, to submit a claim, and FDIC-Receiver would have until November 22, 2009, to make a determination on the claim. Claimants may judicially challenge FDIC-Receiver's treatment of a claim, or continue a pre-receivership legal proceeding as to a claim, within 60 days of the earlier of (i) a decision by FDIC-Receiver on the claim, or (ii) the expiration of the 180-day statutory decision period for the claim. See 12 U.S.C. § 1821(d)(6)(A). Accordingly, this case should remain stayed until the earlier of (i) November 22, 2009, or (ii) 180 days after the named Plaintiffs submit their administrative claim to FDIC-Receiver, in order to permit exhaustion of the administrative claims process. *See*, e.g., *Marquis*, 965 F.2d at 1155 (courts should "hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first occurs").[8]

---

[8] If Plaintiffs ultimately do not file a timely administrative claim in the claims process, FDIC-Receiver will move to dismiss this matter for lack of subject matter jurisdiction. See Intercontinental Travel, 45 F.3d at 1283 (dismissing action filed against financial institution prior to its failure after plaintiff failed to file a timely administrative claim with the Receiver).

## IV.   CONCLUSION

For the foregoing reasons, FDIC-Receiver respectfully requests that the Court further stay this action until the earlier of (i) November 22, 2009, or (ii) 180 days after the named Plaintiffs submit their administrative claims to FDIC-Receiver in the claims process.

DATED this 2nd day of March, 2009.

**ROUTH CRABTREE OLSEN, P.C.**

By  /s/ Teresa M. Shill
Teresa M. Shill, OSB # 031680
Attorneys for the Federal Deposit Insurance
Corporation, as Receiver of Washington
Mutual Bank, N.A.
11830 SW Kerr Parkway, Ste. 385
Lake Oswego, Oregon  97035
(503) 977-7926; Fax (503) 977-7963
tshill@rcolegal.com